Marc J. Randazza, Esq.,
SBN No. 269535
Randazza Legal Group
10620 Southern Highlands Parkway
Las Vegas, NV 89141
888-667-1113
305-437-7662 (fax)
MJR@randazza.com

Attorney for Plaintiff,
LIBERTY MEDIA HOLDINGS, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC d/b/a CORBIN FISHER<br><br>Plaintiff,<br><br>vs.<br><br>PORNILOVE.NET, COREY DEBARROS, and JOHN DOES 3-1000<br><br>Defendants | Case No. 10-CV-1810-JLS-WMC<br><br>**POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS PORNILOVE.NET AND COREY DEBARROS**<br><br>Hearing: October 13, 2011<br>Time: 1:30 p.m.<br>Courtroom 6 |

### I.  THE DEFAULT JUDGMENT SOUGHT IS APPROPRIATE

A.  The Court has Jurisdiction over the Subject Matter and the Defendants

1.      This Court has subject matter jurisdiction pursuant to the Copyright Act, (17 U.S.C. §§ 101 et seq.), the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

2.      This Court has personal jurisdiction over the Defendants Pornilove.net (hereinafter "Pornilove") and Corey Debarros (hereinafter "Debarros") (jointly referred to as "Defendants"), who have engaged in business activities in and directed to this district, and have committed a tortious act within this district.  Defendants transacted business in California and posted copyright infringing materials to servers within California.

3.      Pornilove.net operated using Wordpress.com, which is operated by Automattic, Inc., a corporation located in California.  See Exh. 1 (Screenshot of Pornilove.net, after

1

1  Wordpress removed the site for violation of its Terms of Service, i.e. copyright infringement),
2  and Exh. 2 (Automattic, Inc.'s contact information page).

3      4.    Defendants operated a mirror site, Pornilove.org, which was hosted by Google,
4  another corporation located in California. Exh. 3. Additionally, Defendants posted a large
5  amount of infringing material to Blogs using Google's Blogger platform and Google's servers.
6  Exh. 4. Defendants additionally operated a Facebook page to which they posted links to the
7  active Pornilove active blog. Exh. 5. Facebook is yet another corporation located in California
8  whose services Defendants used to operate their copyright infringement web. Exh. 6.

9      5.    Each of these California businesses required Defendants to agree to a set of Terms
10 of Service, which Defendants consented to by creating accounts with them. Each of these Terms
11 of Service contained similar clauses in which Defendants agreed to California jurisdiction. (It is
12 also worth noting that each of these Terms of Service also had a Copyright Infringement and
13 DMCA Policy, which additionally placed Defendants on notice of that their activities were
14 illegal). See Exh. 7, 8, 9, and 10.

15     6.    Additionally, Defendants committed acts expressly aimed at California residents,
16 which they knew would cause economic injury in California, and which did, in fact, cause
17 economic injury in California. For example, the motion pictures and still images that Defendants
18 pirated clearly state that they are the product of a California company. See Declaration of Eric
19 Gapp ¶ 5. Therefore, Defendants knew or should have known that they were pirating the
20 intellectual property of a California company. Plaintiff's claims arise out of this very conduct,
21 which is expressly aimed at California.

22     7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of
23 the events or omissions giving rise to the claims pleaded herein occurred in this district.

24 B. The facts of the Record Show That a Default Judgment is Warranted

25     8.    Plaintiff Liberty Media Holdings (hereinafter "Liberty" or "Plaintiff") initiated
26 this action against Defendants Pornilove and "Corey" on August 31, 2010, seeking damages and
27 injunctive relief for claims of copyright. ECF No. 1.

28

9. On March 16, 2011, Plaintiff filed its Second Amended Complaint, substituting in Defendant Corey Debarros for "Corey." (ECF No. 20).

10. On March 22, 2011, Defendants Pornilove.net and Corey Debarros were served with copies of the Second Amended Complaint and a Summons. (ECF No. 22 and 23).

11. As Defendants never answered or filed a responsive pleading to the Complaint, Plaintiff requested a Clerk's Entry of Default against each Defendant. (ECF No. 24).

12. Default was entered against Defendants on May 5, 2011. (ECF No. 25).

13. Notice of Plaintiff's intent to seek a default judgment, along with a copy of the Default, was sent via UPS to Defendants on May 6, 2011. Exh. 11.

## C. The Specific Relief Sought by Plaintiff Is Factually Supported and Authorized by Law

14. This Motion for Default Judgment is based on the allegations of the Second Amended Complaint (ECF. No. 20). Defendants have admitted all of the facts therein by failing to respond. This Motion also relies on the facts attested to by the Declaration of Eric Gapp in Support of Motion for Default Judgment and additional exhibits filed in support hereof. Those materials are sufficient to justify the requested relief.

### 1. Defendants Pirated Plaintiff's Works for Commercial Gain

15. It is well settled that, "to prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) the ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.2d 101, 108-109 (2d Cir. 2001); *Hamil America, Inc. GFL*, 193 F.3d 92 (2d Cir. 1999). The facts are absolutely clear. Plaintiff Liberty produces high quality adult entertainment films, which are distributed throughout the world on DVDs and over the Internet on a website where its members pay a monthly fee for authorized access to Liberty's works.

16. Liberty owns copyrights in those materials and has registered them with the United States Copyright Office. See Gapp Dec. ¶¶ 2-3. Moreover, all of Liberty's works bear the Plaintiff's federally-protected trademarks: CORBIN FISHER® and EXELSIOR PRODUCTIONS®. See Gapp Dec. ¶ 4.

17. Defendant Debarros operated a network of websites and blogs that he used to upload and distribute the copyrighted works of others. Specifically, Debarros uploaded vast amounts of copyrighted videos (including those of Plaintiff and at least 21 other studios) to Hotfile.com, and would then create blogs using various platforms (like Google's Blogger) to publish links to the stolen content, posting stills of copyrighted videos on the individual blogs along links to Hotfile.com from the active blog so that anyone could download the entire video, and which would allow Debarros to earn referral fees from Hotfile.com. As these blogs were frequently taken down due to repeat DMCA copyright infringement notices, Debarros operated two websites, www.pornilove.org and www.pornilove.net (Exh. 12), as well as a Facebook page www.facebook.com/pages/PILOVE/115817628434722 (Exh. 5), which he used to distribute the links to each new blog he would create as the old ones were taken down. In fact, the homepage at Pornilove.org stated "Facebook is the best way for you to be kept updated about this blog's url. As you know blogger keeps on deleting it, so follow the Facebook page." Exh. 12.

18. While Plaintiff is not aware of each and every blog created by Debarros, the following is a list of those which Plaintiff became aware of and which were subsequently taken down due to copyright infringement (See Gapp Dec. ¶ 9): Piloveblog15.blogspot.com, Pilove.blog8.blogspot.com, Piloveblog5.blogspot.com, Piloveblog13.blogspot.com, Piloveblog3.blogspot.com, Piloveblog14.blogspot.com, Piloveblog10.blogspot.com, Piloveblog9.blogspot.com, Piloveblog16.blogspot.com, Piloveblog7.blogspot.com, pil1001.blogspot.com, pil1002.blogspot.com, pil1003.blogspot.com, pil3000.blogspot.com, pilblog1000.blogspot.com, pil2000.blogspot.com, hsrhseh.blogspot.com, men-2-2men.blogspot.com, 4bp.blogspot.com, 4guys.nibblebit.com, hotmen.posterous.com, p-i-luv1.blogspot.com, p-i-luv2.blogspot.com, gaygold.ucoz.net, gaylery.blogspot.com, coreydnyctest.blogspot.com, groups.yahoo.com/P-I-LOVE.

19. Additionally, without the benefit of discovery, Plaintiff is unaware how many of its copyrighted works were infringed upon. A list of 48 separate copyrighted works which Plaintiff has documented the Defendants uploading and distributing unlawfully using the Pornilove network is attached hereto as Exhibit 13. See Gapp Dec. ¶ 6.

20. Attached hereto as Exhibit 14 are screenshots of each infringement. See Gapp Dec. ¶ 7

21. Liberty is the registered copyright holder for these works, and the Copyright Registration Certificates for each listed work is attached hereto as Exhibit 15.

22. Furthermore, Defendant Debarros was fully aware of the illegal nature of his acts. This is the reason he went to such great lengths to hide his identity. Plaintiff sent numerous DMCA notices as each new blog was created, each of which would have informed him of the illegal nature of his acts. See Exh. 5. Additionally, Plaintiff sent correspondence directly to, and received correspondence directly from, the Defendant regarding the illegal nature of his actions. See Exh. 16 and Exh. 17.

23. At one point, in his email dated August 26, 2010, Defendant Debarros even attempted to mislead the Plaintiff into believing that all his accounts were inactive and that he would no longer continue his infringing behavior. Despite this, he continued his infringing activity as evidenced by the Pornilove Yahoo! Group which is still active and thriving. See Exh. 18.

24. Defendants were not authorized to duplicate or distribute the Plaintiff's copyrighted works. Gapp Dec. ¶ 11.

25. Quite simply, Defendants are unabashed and unrepentant intellectual property thieves. Defendants are fully aware that their actions were illegal, are fully informed of this action, have been served with the Complaint, have been warned about the consequences of default, and have still refused to participate in this action. Defendants cannot complain when a default judgment is entered.

2. Statutory Damages Are Authorized

26. The Copyright Act provides for a plaintiff to recover, at its election, either (1) its actual damages and (to the extent not redundant) defendant's profits attributable to infringement, or (2) statutory damages. Either basis supports the amount Plaintiff Liberty seeks in this motion. For the sake of simplicity, Liberty primarily couches its request in statutory damage terms as set forth further below.

27. Because actual damages are often hard to prove, statutory damages have been authorized to make such proof unnecessary. *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). Where timely registered works are infringed, as occurred here, the Copyright Act authorizes statutory damages. 17 U.S.C. §504(c). Where, as here, infringement is "willful," the amount may be as high as $150,000 for each infringed work. *Id.* Congress increased the maximum from $100,00 to $150,000 because it found large awards to be necessary and desirable to deter the great temptation to infringement posed by modern computer technology. H.R. Rep. No. 106-216 (1999), pp.6-7. The critical purpose of deterring similar misconduct permits a maximum per work award for willful infringement, even where the infringement caused little to no damage. *Superior Form Builders, Inc. v. Dan Chase Taxidermy Suppply Co.*, 74 F.3d 488, 496-97 (4th Cir. 1996) (collecting authority and sustaining maximum awards despite no proof of actual damages); *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 234 (1952) (for willful infringement a maximum award is permissible "even for uninjurious and unprofitable invasions").

28. Plaintiff Liberty has been damaged by Defendant's conduct, continues to be damaged by such conduct, and has no adequate remedy at law to compensate for all of the possible damages stemming from the Defendant's conduct.

29. Pursuant to 17 U.S.C § 504(c), Plaintiff elects to recover statutory damages.

3. Plaintiff's Copyrighted Works are Valuable

30. Liberty is a well established company with a long reputation for producing videos with exceptional production values. It has won numerous awards for its high quality including the Cybersocket Award for Best Adult Gay Megasite in 2006, Free Speech Coalition Award of Excellence in 2010, and the Xbiz Award for Gay Site of the Year in 2011. Liberty is recognized throughout the industry as one of the highest quality producers of gay erotica.

31. Liberty uses high-quality cameras and state-of-the-art editing and reproduction equipment. Liberty's directors, cinematographers, photographers and editors are highly trained. Gapp Dec. ¶ 2. Liberty is a well run, socially responsible company that produces high-quality product under a premium brand. The experience, hard work and financial commitment behind

Liberty's productions, result in a product that is markedly superior to the content of its competitors. Liberty sets licensing fees for its works higher than many inferior competitors who often flood the market with low-quality, inexpensive, and readily available content. Liberty works hard to protect its image as a premium brand in order to maintain the value of its products.

### 4. The Infringing Acts Harmed and Continue to Harm the Value of Liberty's Works

32. Liberty's ability to sell DVDs and memberships to its website is directly dependent upon its ability to control the distribution of its works. Simply put – Liberty cannot sell its movies when those same movies are otherwise available for free on the Internet.

33. Defendants caused Liberty harm by reproducing and distributing Liberty's works with no digital protection systems, thereby making it possible for users to download the works to their own computers and further distribute the works. Without the benefit of discovery, it is impossible to know how many people downloaded Liberty's copyrighted works from the Pornilove network for free.

34. In *Perfect 10, Inc. v. Talisman Communs., Inc*., 2000 U.S. Dist. LEXIS 4564 (C. D. Cal. Mar. 27, 2000), plaintiff magazine publisher sued a website for publishing its photographs on the Internet. Evaluating damages the Court wrote, "While it would be difficult to quantify Perfect 10's damages resulting from the infringement, it is clear that Perfect 10 has been severely damaged. The photographs have been distributed worldwide, in a form that is easy to download and easy to copy. A virtually unlimited number of copies can be made of the copyrighted photographs, as a result of [defendant's] infringement." *Perfect 10, Inc*., 2000 U.S. Dist. LEXIS 4564 at 11. The Court went on to award the maximum statutory award for willful infringement ($100,000 per work at the time) for each infringed photograph. This $100,000 per photograph certainly demonstrates a legal basis for Liberty claiming that much per DVD (if not more).

35. "When digital works are distributed via the internet, as in this case, every downloader who receives one of the copyrighted works from Defendant[s] is in turn capable of also transmitting perfect copies of the works. Accordingly, the process is potentially exponential rather than linear, threatening virtually unstoppable infringement of the copyright." *Elektra*

*Entm't Group, Inc. v. Bryant*, 2004 U.S. Dist. LEXIS 26700 (C.D. Cal. Feb. 13, 2004), citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013-1014 (9th Cir. 2001).

### 5. The Facts and Law Support A Maximum Statutory Award

36. The infringements here were willful and malicious. Defendants knew, or should have known, that their conduct was unlawful, and acted without the slightest pretense of a justification.

37. Defendants' objective to was to steal Liberty's property for financial gain, plain and simple.

38. The Defendant's illegal actions were not a momentary lapse, but a sustained commercial enterprise. Indeed, despite promising to end his piracy network, and despite receiving notice of this suit, Defendants are, to this very day, continuing their illegal piracy enterprise. Every time one blog or website operated by Defendants was taken down due to copyright infringement, Defendants would simply start a new one.

39. Defendants willfully infringed on at least 48 of Liberty's works. Without the benefit of discovery, it is unknown how many other works Defendants may have unlawfully copied and distributed.

40. On a motion for default judgment, a district court awarded a maximum statutory award of $150,000 each for infringements of *The Last Samurai* and *Mystic River*, when a member of the Academy of Motion Picture Arts and Sciences who had been provided with a screener copy of the movies allowed the movies to be duplicated and distributed via the Internet. *Warner Bros. Entm't, Inc. v. Caridi*, 346 F. Supp. 2d 1068 (C.D. Cal. 2004). Similarly, in *Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc*. (259 F.3d 1186 (9th Cir. 2001)(cert denied, 534 U.S. 1127 (2002)), the Ninth Circuit affirmed an award of approximately $72,000 per infringement of several half-hour television shows.

41. The popularity and economic value of adult content cannot be denied. Thepiratebay.org, the well-known and most popular source of free infringing copies of box office movies is ranked as the 102nd most popular website in the world. At least four websites offering free infringing copies of adult movies are more popular: pornhub.com (55th)

xvideos.com (58th); youporn.com (62nd); and xhamster.com (81st).  Erotic content is a more popular and economically valuable online commodity than Hollywood box office films. Prior federal court decisions have recognized the high economic value of erotic material.  A federal court awarded $5,000 per erotic photograph (*Playboy v. Webbworld*, 968 F. Supp. 1171, 1176 (E.D. Tex. 1997)) and where infringement was found to be willful a court awarded $100,000 (the maximum award at the time) per adult photograph. *Perfect 10, Inc.*, 2000 U.S. Dist. LEXIS 4564 at 11.

42. Statutory damages serve both compensatory and punitive purposes, and thus may be appropriate "whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant" in order to effectuate the statutory policy of discouraging infringement. *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998).

6. Increased Damages for Willfulness

43. "In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). Defendants knew or should that known that their acts constituted copyright infringement.  They knew that they did not have Liberty's permission to reproduce and distribute the Works for their own commercial gain and could only remain unaware of the infringing nature of their actions by engaging in willful blindness.

44. The "statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233, 97 L. Ed. 276, 73 S.Ct. 222 (1952).  Indeed, online piracy committed by those who think the laws either do not apply to them, or that copyright laws should not apply to works such as my clients, are the biggest threat that the adult entertainment faces today.  Gapp Dec. ¶ 12.

45. It is appropriate that the Court use opportunities such as this to send a message of deterrence to would be infringers that, "it costs less to obey the copyright laws than to disobey

them." *International Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652, 659 (D.N. Ill. 1987), affirmed 855 F. 2d 375 (N.D. Ill. 1987). The District Court in *Korwin* held that, "[t]o determine the amount of statutory damages the court should primarily focus upon two factors: the willfulness of the defendant's conduct, and the deterrent value of the sanction imposed," pointing out that "courts have repeatedly emphasized that defendants must not be able to sneer in the face of copyright owners and copyright laws." *Id*. See also, *Hickory Grove Music v. Andrews*, 749 F. Supp. 1001, 1003 (D. Mont. 1990); *Van Halen Music v. Foos*, 728 F. Supp. 1495 (D. Mont. 1989).

46. Therefore, it would be proper to award maximum damages for the intentional infringement of Liberty's copyrighted motion pictures.

### 7. $1,200,000 in Statutory Damages Should Be Awarded Here

47. The infringements here were willful and malicious. Defendants knew their conduct was unlawful, and acted without the slightest pretense of a justification. In fact, Defendants are still going to great lengths to continue their copyright infringement enterprise despite the continuous efforts of Plaintiff, and many other studios, to shut it down. Defendants knew of Liberty's rights and intended to injure Liberty's rights for profit. Defendants' objective to was to steal Liberty's property for financial gain, plain and simple.

48. The Defendants' illegal actions were not a momentary lapse, but a sustained commercial enterprise. To deter others from yielding to the same temptation, a large award is appropriate. *Yurman*, 262 F.3d at 113-114.

49. Defendants willfully infringed on at least 48 of Liberty's works. Without the benefit of discovery, it is unknown how many other works Defendants may have unlawfully distributed.

50. At the maximum of $150,000 per work, which would be appropriate here, statutory damages of $7,200,000 are appropriate for each duplication. In lieu of this maximum damages award, Liberty proposes and requests that the Court award $30,000 per work for a total of $1,440,000. This is five times less than the statutory maximum. On the facts of this case,

Plaintiff believes such an award will adequately deter others as well as compensate Liberty for its losses.

### 8. Liberty Is Entitled to Injunctive Relief and Attorney's Fees

51. Liberty seeks an injunction against future similar misconduct by Defendants. 17 U.S.C. § 502(a) makes express that the Court may issue "final injunctions on such terms as it may deem just to prevent or restrain infringement of a copyright." Thus, such relief is authorized here by Defendants' conduct.

52. Finally, Plaintiff Liberty also requests attorney's fees in the amount of $27,855. 17 U.S.C. § 505 provides that the Court may "award a reasonable attorney's fee to the prevailing party as part of the costs." The sum of $27,855 is reasonable. See Declaration of Eric Gapp ¶ 13.

## II. CONCLUSION

53. For the reasons demonstrated above, and based on the supporting evidence, Plaintiff Liberty requests that a default judgment be entered against Defendants Pornilove.net and Corey Debarros.

54. If this motion is not opposed, Liberty requests entry of the proposed Final Judgment on the basis of the papers. If, however, there is an opposition, Liberty requests such a hearing as the Court deems appropriate, and reserves the right to offer additional evidence at that time.

55. WHEREFORE, Liberty requests that:

1. Plaintiff is awarded damages of $1,440,000 for infringement upon the Plaintiff's copyrights;

2. That Corey Debarros is permanently enjoined from using the Plaintiff's intellectual property, including its copyrighted works, in any infringing manner whatsoever;

3. That the Pornilove enterprise shall be terminated, and that all ISPs must shut down any Pornilove websites and forums.

4. That Plaintiff is awarded $27,855 in attorney's fees (61.9 hours at $450 per hour);[1] See Exhibit 19.

5. That final judgment be entered in favor of Plaintiff for $1,467,855, and that interest shall begin collecting at a rate of 6% per annum from the date of this entry;

6. That the Clerk shall issue a Writ of Execution forthwith for $1,467,855;

7. That the Clerk shall issue a Writ of Garnishment and a Continuing Writ of Garnishment forthwith for $1,467,855;

8. Jurisdiction of this case be retained to enter further orders that are proper to compel compliance with the injunctive relief, including but not limited to issuing a writ of bodily attachment if Debarros continues his campaign of infringement.

Date: July 19, 2011.
s/ Marc Randazza
Marc Randazza, SBN 269535
Randazza Legal Group
10620 Southern Highlands Pkwy #110-454
Las Vegas, NV 89141
888-667-1113
305-437-7662 (fax)
MJR@randazza.com

---

[1] Please note that this includes only attorney time for Marc Randazza, and does not include paralegal time billed on this matter.

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed using this Court's CM/ECF system on July 25, 2011. A copy of this motion has been sent via US Mail to Corey Debarros and Pornilove.net.

Dated: July 25, 2011

Respectfully submitted,

s/ Marc Randazza
Marc J. Randazza, SBN 269535
Randazza Legal Group
10620 Southern Highlands Pkwy #110-454
Las Vegas, NV 89141
888-667-1113
305-437-7662 (fax)
mjr@randazza.com